IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Glen Minges, *et al.*, | : | |
| | : | Case No. 1:13-cv-03 |
| Plaintiffs, | : | |
| | : | Chief Judge Susan J. Dlott |
| v. | : | |
| | : | Order Granting Motion to Dismiss and |
| Butler County Agricultural Society, | : | Denying Motion for Leave to Amend |
| *et al.*, | : | Complaint |
| | : | |
| Defendants. | : | |

This matter is before the Court on Defendants' Motion to Dismiss (Doc. 11) and Plaintiffs' Motion for Leave to Amend Complaint (Doc. 14). Plaintiffs Glen Minges, Layne Minges, and Z.M., a minor, allege that Defendants Butler County Agricultural Society ("BCAS") and members of the BCAS Board of Directors violated their federal due process rights by suspending them from participation in the livestock competitions at the Butler County Fair for two years. Plaintiffs also assert state law claims for breach of contract and false light arising from the same allegations. For the following reasons, the Court will **GRANT** the Motion to Dismiss and **DENY** the Motion for Leave to Amend Complaint.

I.  BACKGROUND

A.  Factual Allegations

The following factual allegations from the Complaint (Doc. 1) are taken true for purposes of the pending motions.

Plaintiff Z.M. is the minor child of Plaintiffs Glen and Layne Minges. (*Id.* at 4.)[1] Defendant BCAS is a non-profit "county agricultural society formed and operated under the

---

[1] Citations to page numbers in documents filed in the CM/ECF system refer to the "PAGEID #."

1

auspices of Chapter 1711 of the Ohio Revised Code." (*Id.* at 4, 6.) Defendants Dale Chalk, Gary Fall, Dan Martin, Kent Taylor, David Vollmer, Doug Turner, Leon Simpson, Nick Forrest, Bob Ruskaup, and Tim Van Gorden are all members of the BCAS Board of Directors ("BCAS Board"). The BCAS and the BCAS Board are sometimes jointly referred to herein as the Fair Board. Plaintiffs sued the BCAS Board members in their individual and official capacities. (*Id.* at 4–6.)

The BCAS's "stated purpose" is "the improvement of agricultural horticulture, better livestock, uniform domestic science, together with all other industrial, commercial, and educational interests of Butler County." (*Id.* at 6.) The BCAS sponsors and conducts an annual weeklong fair which has attracted crowds of 100,000 attendees. The fair includes a Junior Fair Program with 1,400 members. (*Id.*) The fair "is intended to and does have a substantial positive impact not only on the social and recreational life but also on the educational, commercial, and economic concerns of the general community of Southwest Ohio." (*Id.*)

The BCAS publishes an annual Butler County Fair Program Book ("Program Book") which contains rules and regulations for the fair exhibitions and competitions plus a Livestock Exhibitor Agreement ("LE Agreement"). (*Id.* at 7.) The LE Agreement contains the following provision relevant to participants who exhibit livestock at the Butler County Fair:

> 1. Fair Board, Exhibitor and Parents/Guardian shall abide by and comply with the laws of the State of Ohio, regulations of the Ohio Department of Agriculture, the rules, regulations and decisions of the Fair Board as set forth in the Butler County Fair Program Book, this Agreement or otherwise established by Fair Board decision from time to time.

(*Id.*)[2]

---

[2] Plaintiffs purported to attach a copy of the LE Agreement as Exhibit A to the Complaint, (Doc. 1 at 7), but the Complaint filed in the CM/ECF system has no exhibits attached.

2

In 2011, Z.M. participated in a local 4H program by feeding, washing, and grooming "King," a steer. Z.M., then fifteen years old, entered King in a livestock competition at the 2011 Butler County Fair. (*Id.* at 7.) The competition was a terminal competition which required the Grand Champion Market Steer to be taken for slaughter after the competition. King was named the Grand Champion Market Steer at the competition. Z.M.'s award included eligibility to receive a monetary award or premium based on King's market value. (*Id.*) BCAS rules required that King undergo a urine analysis after the competition. The urine analysis revealed traces of the drug Banamine in King's system. (*Id.* at 7–8.)

Ohio Administrative Code § 901-19-19 imposes strict liability upon the exhibitor and owners of livestock for the presence of unlawful substances found in livestock, but the penalty can be abated in some circumstances. The regulation provides in full as follows:

This is a mandatory rule.

(A) Both the exhibitor and the owner of livestock are absolutely liable to discipline under rule 901-19-21 of the Administrative Code for the presence of an unlawful substance in livestock and unacceptable practices done to livestock.

(B) If the exhibitor or the owner was a minor child at the time the unlawful substance or unacceptable practice was detected, the parent or guardian of the person shall also be absolutely liable to discipline under rule 901-19-21 of the Administrative Code for the presence of an unlawful substance in livestock and unacceptable practices done to livestock.

(C) The director or the sponsor in imposing discipline under paragraph (A) of this rule upon a person, shall mitigate the discipline imposed based upon one or more of the following facts if established.

>(1) The person did not introduce the unlawful substance into the animal or do any unacceptable practices to the livestock;
>
>(2) The person had no actual or constructive knowledge that the unlawful substance was introduced into the livestock or that unacceptable practices had been done to the livestock;

>   (3) The unlawful substance was not introduced into the livestock and the unacceptable practices were not done to the livestock through the person's negligence.

Ohio Admin. Code § 901-19-19.

On November 1, 2011, the Ohio Department of Agriculture ("ODA") provided the Minges family with a notice of hearing advising that the ODA intended to disqualify Z.M. from the fair and to require him to forfeit his awards. (Doc. 1 at 8.) Following the hearing, the hearing officer found that there was no evidence that Z.M. or the Minges had administered Banamine to King. The hearing officer also found that the fair officials had not followed a mandatory protocol to engage the Minges family in the collection process. (*Id.*) He recommended that the penalty be reduced to a letter of reprimand. (*Id.*) The ODA Director then agreed that there was no evidence that the Minges or Z.M. intentionally violated the regulations, but he rejected the recommendation to reduce the discipline to a letter of reprimand. (*Id.*)

Plaintiffs appealed the order of the ODA to the Franklin County, Ohio Court of Common Pleas. (*Id.* at 9.) The court overturned Z.M.'s disqualification. (*Id.*) The court held that the ODA failed to put Z.M. on notice of the specific charges against him and therefore violated his right to due process. The court further held that there was not sufficient evidence to conclude that Z.M. or the Minges violated a BCAS or ODA rule. (*Id.*)

On or about August 31, 2012, the Fair Board informed Plaintiffs that it intended to move forward with disciplinary action notwithstanding the court decision. (*Id.*) The Fair Board held a hearing on October 9, 2012. The Fair Board disqualified King from the 2011 Butler County Fair, required Z.M. to forfeit his monetary awards or premiums, and suspended Z.M. and the Minges family from participating in the livestock competitions at the 2012 and 2013 Butler County Fairs. (*Id.* at 9–10.)

4

**B.     Procedural History**

Plaintiffs filed the Complaint to initiate this lawsuit on January 3, 2013. They allege four counts for relief: (1) violation of procedural due process under the 14th Amendment to the U.S. Constitution pursuant to 42 U.S.C § 1983, (2) violation of substantive due process under the 14th Amendment to the U.S. Constitution pursuant to 42 U.S.C. § 1983, (3) breach of contract, and (4) false light publication. (Doc. 1 at 10–11.)

Defendants have moved to dismiss the Complaint. They assert that Plaintiffs failed to state a claim upon which relief can be granted as to the due process claims, that the BCAS Board members are immune from suit as to claims brought against them in their individual capacities, and that the Court should decline pendent jurisdiction over the state law claims.

Plaintiffs oppose dismissal. Plaintiffs also have moved for leave to amend the Complaint. Plaintiffs seek to add the following allegation:

> Defendant Vollmer had testified against Z.M. during the administrative hearing held by the ODA. In fact, Defendant Vollmer is a close relative of a competitor who was the runner-up in the 2012 Butler County Fair Livestock Competition won by Z.M. Moreover, Defendant Vollmer served as the collection agent of the specimen taken from King following the competition, which led to the steer's disqualification. Notably, the administrative hearing officer determined that fair officials, including Mr. Vollmer, failed to comply with the state-mandated protocol for specimen collection. Nevertheless, Mr. Vollmer was one of the board members of BCAS who participated in the decision to discipline the Minges family.

(Doc. 14-1 at 68.) Plaintiffs do not seek to amend the existing counts for relief nor to add new claims. The pending motions are ripe for adjudication.

5

**II.     ANALYSIS**

**A.     Defendants' Motion to Dismiss**

**1.     Legal Standards Governing Motions to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A district court "must read all well-pleaded allegations of the complaint as true." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997). However, this tenet is inapplicable to legal conclusions, or legal conclusions couched as factual allegations, which are not entitled to an assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To withstand a dismissal motion, a complaint "does not need detailed factual allegations," but it must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]he complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Harvard v. Wayne Cty.*, 436 F. App'x 451, 457 (6th Cir. 2011) (internal quotation and citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Court does not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

6

### 2. Substantive and Procedural Due Process Claims

Plaintiffs assert claims for relief pursuant to 42 U.S.C. § 1983 for violations of procedural and substantive due process. Section 1983 provides a cause of action only to individuals whose constitutional rights are violated by persons acting under the color of state law. 42 U.S.C. § 1983. Defendants move to dismiss the due process claims on multiple grounds. To begin, Defendants assert that they did not act under the color of state law based on the facts pleaded.

A private individual or entity acting on its own cannot deprive a citizen of his constitutional rights. *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 936-37 (1982); *see also Lansing v. City of Memphis,* 202 F.3d 821, 828 (6th Cir. 2000). However, under § 1983, a private party's actions may constitute state action when those actions are "fairly attributable to the state." *Lugar,* 457 U.S. at 937. There are three accepted tests for determining whether private action is fairly attributable to the state: (1) the symbiotic relationship or nexus test; (2) the public function test; and (3) the state compulsion test. *See Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003); *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003) (*en banc*). Both parties agree that the relevant test here is the symbiotic relationship or nexus test. "Under the nexus test, the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Lansing*, 202 F.3d at 830 (internal quotation and citation omitted).

The Court is not writing on a clean slate when the Court determines whether a county agricultural society has acted under the color of state law. In 1977, a court in the Southern District of Ohio held that the Ohio Exposition Commission, an entity created by Ohio statute to manage the Ohio State Fair, was a state actor for purposes of 1983. *Int'l Soc'y for Krishna*

7

*Consciousness, Inc. v. Evans*, 440 F. Supp. 414, 416, 419 (S.D. Ohio 1977).  Two facts were relevant to the court's holding.  First, the Ohio Exposition Commission conceded it was operating under color of state law.  *Id.* at 419.  Second, the annual budget for the Commission came from a direct subsidy from the state legislature.  *Id.*

Twenty years later, an Ohio appeals court held in *Yiamouyiannis v. Lowe*, No. 96CAE-05-024, 1997 WL 5281 (Ohio App. Jan. 3, 1997), that a county agriculture society acted under color of state law.  In *Yiamouyiannis*, the plaintiff sued the agricultural society after he was removed from the county fair grounds for violating the fair's regulations against the distribution of literature outside of the confines of rented exhibition space.  *Id.* at *1.  The state court found that a § 1983 claim could proceed against the agricultural society when the summary judgment evidence showed that the agricultural society was established under state law, it received approximately $42,000 in state and county funding for the fair, it received rent-free use of county property for the fairgrounds, and the State of Ohio paid the insurance on the fairground buildings.  *Id.* at *2.

Three years after *Yiamouyiannis*, the Sixth Circuit discussed in *Lansing* the issue of whether state regulation was sufficient to satisfy the nexus test.  The *Lansing* case involved the actions of a non-profit corporation, funded in part by state and local governments, at the festival it sponsored which was held on public property.  202 F.3d at 825–26.  The court relied upon decisions from both the Sixth Circuit and the Supreme Court which had been issued after the 1977 *Evans* district court decisions.  *Id.* at 830.  The *Lansing* court concluded that it had become "well-established that state regulation, even when extensive, is not sufficient to justify a finding of a close nexus between the state and the regulated entity." *Id.*  The court further stated that it was "[e]qually well-established that neither public funding nor private use of public property is

8

enough to establish a close nexus between state and private actors." *Id.* The *Lansing* court determined that the non-profit corporation had not engaged in state action when it removed a person engaging in religious speech from an area just outside the festival entrance. *Id.* at 826–27, 834.

The Southern District of Ohio applied the *Lansing* decision in *Farmer v. Pike County Agricultural Society*, No. 2:05-cv-664, 2006 WL 1476186 (S.D. Ohio May 24, 2006). In *Farmer*, the plaintiffs sued the Pike County Agricultural Society ("PCAS") for a violation of due process after being banned from participating in the livestock exhibitions at the county fair. 2006 WL 1476186, at *1. The Court examined whether the PCAS had acted under the color of state law as necessary to impose liability pursuant to § 1983. *Id.* at 6–7. The court cited *Lansing* for the propositions that "the mere presence of state regulation, even if extensive, does not, by itself, justify a finding of close nexus" and that "public funding, or the private use of public property" is not sufficient. *Id.* at *6. Accordingly, the court held that the fact that "the State of Ohio regulates or may fund county agriculture societies is, by itself, insufficient to establish the nexus." *Id.* at *7. The court concluded that the record at summary judgment was devoid of evidence from which the sufficiently close nexus between PCAS's challenged action and the State of Ohio could be inferred. *Id.* The *Farmer* court purported to distinguish the Ohio court *Yiamouyiannis* decision on the facts, but it appears to have found it legally insufficient to establish a state nexus each of the factors found to be sufficient in *Yiamouyiannis*. *Id.*

In this case, Plaintiffs do not plead sufficient facts to establish a close nexus between the State of Ohio and the challenged action of the BCAS. Plaintiffs allege that the actions taken by the BCAS Board members were "taken under the color of state law." (Doc. 1 at 4–6). This allegation is conclusory and not accepted as true for purposes of a dismissal motion. *See Iqbal*,

9

556 U.S. at 678. Plaintiffs plead factually only that the BCAS is "formed and operated" under Ohio Revised Code chapter 1711. (Doc. 1 at 4.) The legal analysis in *Farmer* and *Lansing* is controlling as to this fact allegation. State regulation of the BCAS is not sufficient to establish that Defendants acted under the color of state law when they disciplined Z.M. and the Minges. *See Lansing*, 202 F.3d at 830; *Farmer*, 2006 WL 1476186, at *7. Plaintiffs attempt to distinguish *Farmer* on the grounds that the *Farmer* case was resolved at summary judgment and after discovery. However, the defendants in *Farmer* did not file a Rule 12 dismissal motion so the fact that the case proceeded to summary judgment is not relevant. *See* No. 2:05-cv-664 (S.D. Ohio).

The Court holds that Plaintiffs failed to plead facts sufficient to establish that the BCAS or the BCAS Board members acted under the color of state law when they disciplined the Minges for violation of the livestock exhibition regulations. Accordingly, Plaintiffs have failed to state a claim upon which relief can be granted as to due process claims.[3] The Court need not examine Defendants' alternative arguments that Plaintiffs failed to plead sufficient facts to prove substantive or procedural due process violations. Likewise, the Court need not examine whether the individual Defendants were entitled to qualified immunity if they had violated Plaintiff's constitutional rights. The Court will grant the Motion to Dismiss as to the federal due process claims.

### 3. State Law Claims

Defendants next argue that the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims for breach of contract and false light. Plaintiffs assert in the Complaint that the Court has jurisdiction over the state law claims only on the basis of 28 U.S.C.

---

[3] In so holding, the Court is not passing upon the propriety of the Defendants' actions in disciplining Z.M. and the Minges.

§ 1367. (Doc. 1 at 3.) Pursuant to § 1367, a district court can decline to exercise supplemental jurisdiction over a state law claim if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Court is dismissing the federal due process claims here pursuant to Rule 12(b)(6). Accordingly, the Court will decline to exercise supplemental jurisdiction and will grant the Motion to Dismiss as to the state law claims as well.

**B.     Plaintiffs' Motion for Leave to Amend Complaint**

Finally, the Court must resolve the Motion for Leave to Amend Complaint. The Federal Rules of Civil Procedure provide that a district court should "freely grant leave when justice so requires." Fed. R. Civ. P. 15(a). Plaintiffs here seek leave to add one set of new allegations regarding the participation of Defendant Vollmer in the disciplinary investigation of and proceedings against Z.M. and the Minges. (Doc. 14-1 at 68.) The new allegations are not relevant to an analysis of whether Defendants acted under the color of state law for purposes § 1983 due process claims. The Court would dismiss Plaintiffs' due process claims even if it granted the leave to amend. Accordingly, the Court will deny the Motion for Leave to Amend Complaint as futile.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. 11) is **GRANTED**. Plaintiffs failed to state a claim upon which relief can be granted on the federal due process claims. The Court declines to exercise supplemental jurisdiction over the remaining state law claims. Further, Plaintiffs' Motion for Leave to Amend Complaint (Doc. 14) is **DENIED** as futile.

**IT IS SO ORDERED.**

    ____s/Susan J. Dlott_____
Chief Judge Susan J. Dlott
United States District Court

J:\Lawclerks\Fechtel\Minges.12(b)(6).ord.doc

13